The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Good morning, Your Honors, and may it please the Court. My name is Danny Zemel and I am here on behalf of Andrew Fields, III, the petitioner. Mr. Fields alleges that he was savagely beaten by prison guards while both his hands and feet were shackled. In response to those attacks, Mr. Fields brought a variety of claims against the officers who attacked him and their superiors. His complaint was dismissed under the PLRA's pre-screening requirement, as a result of which he received a strike under the PLRA's three strikes rule. While Mr. Fields brought numerous claims, the only one to find this Court currently is his damages claim for excessive force under the Eighth Amendment against the specific individual officers who beat him. While Mr., while the petitioner... Why the last part of that sentence? Why is it only against the individual officers? You brought a complaint against BOP, um, and when you came here, BOP was still listed. They've not been dismissed voluntarily in any context, so why is, why is it only against the individual defendants? The only issue still remaining that's being contested, Your Honor, because the petitioner has conceded that there is no valid claim under FDIC v. BOP. Well, but, but that's an alternative ground, right? So the district court dismissed because there's no cause of action, um, and that would eliminate the claim against BOP. Or there's an alternative ground, which is even if there's a cause of action under Bivens, it doesn't apply against BOP. But it seems odd to say that you can, like, concede that, and obviously this is relevant only because the individual defendants aren't here, but it seems odd you can concede there's an alternative ground to dismiss BOP, um, and therefore avoid BOP's involvement on the Bivens question. Well, Your Honor, if that is, uh, uh, if that is Your Honor's petition, I'm more than happy to have the, the BOP provide that opinion. What I'm contesting here is that the individual claims that we are arguing here should be recognized under Bivens are the ones against the individual officers. I'm just, I, you just raised in the property, if I just wanted to understand this, your position on the adversity point. Yes, Your Honor. Um, but they're technically still in, and the question is just which of two grounds this court chose to affirm the judgment against BOP. Yes, Your Honor, that would be one, that would be one way of looking at it, yes, Your Honor. Uh, so turning to the Bivens questions against the individual officers, I would like to acknowledge that over the recent years, bringing a Bivens claim has become Yeah, that's, that's what I was going to ask you. Egbert has effectively closed the door on Bivens claims, it seems. So what is your best argument to get by Egbert? Well, Your Honor, our best argument would be, as we put in our brief, that it's not our position that Egbert has fully closed that door. The court had an opportunity in Egbert, and it was advanced by concurrences and advanced by the briefs in that case to either... So how are you going to get through the crack in the door? Well, yes, Your Honor, because in this instance, other, different from the Supreme Court opinions and this court's precedent on this case, there are no alternative remedies in this instance due to the lack of operational, the lack of the operation of the BOP's administrative remedy program in this instance, and there are not the same potential systemic consequences of the like in Bolger, Tate, or Mays that this court has previously addressed. We are not dealing with decisions made by policymakers of the BOP. These are not transfers among inmates or... Right, but if there's liability even to these individual officers, wouldn't that create a system-wide consequence, the precedent would? Your Honor, I believe you're referring to Bolger, and in that case, Your Honor, we don't believe that that was necessary. And Mays. Well, those decisions were not necessary to the holding, but again, we were looking there at the interference with duties of individuals. I'm wondering that those two decisions and the reasons they gave were dicta? No, Your Honor, that there were multiple special factors given in each of those cases for why the claim could not proceed, and especially in Mays, there was no indication given that each one was necessary to the holding. But also, we're looking at a different situation of systemic effects here. The Supreme Court has never blessed the idea that mere liability against an officer is a potential... Can I just go back? I'm just curious about the dicta point in those two decisions. Your position is where the court identifies and says there are four special considerations that counsel against recognizing Bivens. A subsequent court can say, because no one of those was necessary, none of them are necessary? I mean, when the court says there are four, and then therefore does not recognize it, I'm having a hard time understanding how we can pick and choose which ones of those we now want to ignore. Your Honor, I apologize if I misspoke. I was a little unclear on that. Not necessarily that those were dicta and need to be ignored, but that this is not nearly as broad of a holding as maybe that line would have been. That there were special factors there of increased liability on individuals who were beyond the traditional law enforcement scope. And that you had individuals... Again, the main issues in Tate, Mays, Bulgers, that you were looking at policies being challenged, BOP policies were being challenged. There are specific policies in the BOP for transfers, administrative segregation, employment, those kinds of things are all made in more systemic levels. And challenges to those automatically will invoke systemic issues. Whereas in the traditional Fourth Amendment, Eighth Amendment, search and seizure, or in this case, we're calling for excessive force, the more traditional law enforcement line operations do not have the same issues. If we're talking about the potential impact on the officers of their duties, there are other federal laws and doctrines that handle that issue. Most notably, the Prison Litigation Reform Act. We have a pre-screening mechanism like here, where none of the individual officers who ever served, as it's pointed out, there was no impact on their duties here because any frivolous claim will be weeded out by the district court. It is mandatory under the PLRA that there be this screening. And so we don't have that same issue like the court raised in Egbert, the Supreme Court raised in Egbert, where it's easy to allege a First Amendment retaliation claim as it was put in that court, get past motion to dismiss, and get into extensive discovery. Here, we have a harder claim to allege, excessive force under the Eighth Amendment is a higher bar. And second, you have the Prison Litigation Reform Act that requires pre-screening. And if there are too many lawsuits that are deemed frivolous or failure to state a claim filed by an inmate, they are then prevented from using the informant proper as proceedings in the future, which for many federal prisoners essentially means that they are unable to file at all at that point. So again, we have other mechanisms limiting that potential factor. Can we go back to your alternative remedies argument? Because I think that the point you were going to make here is that even though there are maybe alternative remedies, appellant has been denied access to those remedies, correct? Is that your argument? Yes. The phrasing we're using is that they weren't operational in this case as to him. And so the difference, again, I think there between Bolger and Mays is that Bolger, to take for instance, there the individual raised the issue that Mr. Bolger had only been in. So can I understand that in your view, at least with respect to this factor, to determine whether the cause of action exists or not, we would have to look at whether a given plaintiff was not allowed to pick up the grievance forms, right? So it's like a case by case. I mean, every other like Bivens case I can think of, the court looks not at individual plaintiffs or whether the process was operational or working well in that instance. But instead, does the law provide for such a remedy, right? That it's not an individual case, because we're trying to determine, I thought, whether there's a cause of action for everyone, not just for your client. Yes, Your Honor. And again, we are asking that in any instance where this is, that would be a factor that you must allege to provide a Bivens claim, the same way you must allege certain... I'm sorry, say that one more time. So in other words, there's only a cause of act, the cause of action, one of the elements of the cause of action is that they did not let me get the prison grievance form? Your Honor, in this instance, yes, because that follows the Supreme Court precedent, where we are looking at, again... What is the case that suggests that when we recognize, I mean, that would be a very novel element to every other Bivens action that the court has recognized, right? I mean, I've never seen an element that suggests that. Yes, Your Honor, because the Supreme Court has not faced that specific issue. And what we're looking at is from the opposite, it's kind of the opposite way around. This court looks at... We're looking at, is it really an alternative remedy if the individual cannot use the alternative remedy? Just because we say there is one does not mean there actually is one, correct? In some instances, Your Honor, I think the difference here I'm trying to get at is that in Bolger and other instances where the individual did not have access to the remedy or was not able to utilize in the right way, those were decisions made by the BOP. The remedy was structured in such a way that it left certain things out. It was calibrated, as the Supreme Court said, to the remedy. Well, here it's the decision to withhold grievance forms from him was made by the BOP. It was made by individual officers, Your Honor. It was not a policy decision by the BOP. And I think that's the distinction here, is that we're looking at... We have individual officers here... Okay, well, I thought that might have helped you, but maybe not. Your Honor, no, I get it. Because in this instance, if the BOP had chosen not to provide, that is something the Supreme Court has said, that it is the BOP's discretion what remedies to apply. The same way there's no damages remedy in the administrative remedies program is not binding. However... Okay, then how do you... Then what's your argument on the alternative remedies? That it was not operational in this... And what does that mean? That he was not provided access to it, not because the policy... That's what I just said, though. And you disagreed with me. I was trying to help you. I think the disagreement, Your Honor, here is between who denied him the access to the remedies, is that as he alleged in his complaint, he was denied access to the remedy by rogue BOP officers, not by some kind of policy decision by the BOP. I see. Mrs. Zimmel, let me ask you, go back to Judge Richardson's question. And this is a counterfactual. But let's say his point is looking at the broader reach of everyone, not just what happened here. What if these operational officers had not prevented access and he could avail himself of whatever remedies were available? Do you say that those remedies would be adequate or not? Your Honor, under this court's precedent, yes. This court has already decided in Bolger require relooking at those cases. So yes, under this court's precedent, those are considered adequate. Actually, it's not under this court's precedent. It's not for this court to decide whether they're adequate, but that they exist. And that is the sufficient thing. Again, the distinction we're drawing here is that that's a decision made by the BOP. This is not. And we're looking to defer to congressional and executive decisions about what scope of remedy should be there. We're not looking to defer to individual officers choosing not to allow themselves to face any remedies by failing to provide the grievance forms the BOP has told them to provide. So in this case, you're alleging that the rogue act that caused the violation itself is also the one that prohibited from having alternative relief. They were two separate actions, but yes, Your Honor. I mean, but it's all capsulized the same type wrong actors, correct? Yes, Your Honor. And again, in terms of the cause of action, broader part, I am, we are... But different officers, right? Yes, Your Honor. The alleged beatings and the alleged deprivation of forms, they're different rogue officers. Yes, Your Honor. You're saying. Yes, there were different officers. There is a potential one overlap. There is some of the officers are John Doe's. Mr. Fields was not aware of the name of every single one, but the ones that he does have names for are different. Yes, Your Honor. If there's no more questions on the ARP for now, I'd like to turn briefly to the something else that was raised, which would be the Federal Tort Claims Act as a potential remedy here. It's like to point out that while it has had some doubt passed upon it, Carlson is still good law in this court. I think the Supreme Court still follows Carlson that the FDCA is not an alternative remedy when it comes to Bivens. And that can be most clearly seen by Egbert. In Egbert, the individual in that case, the plaintiff did file an administrative claim under the FDCA. And then his time, lastly, he did not file a claim under the FDCA, a lawsuit under it. The briefs in that case at the Supreme Court all addressed that issue. The Customs and Border Protection brief advanced heavily that the FDCA was an alternative remedy that should dismiss his claim completely. The Supreme Court did not address that point at all. They did not even mention it as a remedy in the process going through the case. And that is a very strong indication that Carlson is still good law. And while there may be other remedies, the ARP or other things that can be is not an appropriate remedy to be looked at in this situation. And the other one would be the Prison Litigation Reform Act, which we've discussed a lot here. There's been a lot of discussion of the fact that in the mid-'90s, Congress passed the Prison Litigation Reform Act, which is quite comprehensive. But it covers both state, local, and federal prisons. It was not solely focused on federal prisons. And it was stated in DICTA and Ziegler that that could counsel against a damages claim in this instance. But that was DICTA and the Ziegler opinion. That part of the opinion was remanded for later decision on whether there were special factors counseling a claim against the warden. Don't we seem to suggest that in Mays and Bulger, too, though? That's also not necessary to those cases, so we should ignore those pieces, too? Your Honor, it's listed along with congressional silence and other aspects. Again, the plaintiff's position that that is something the court is going to be, if the court sees that as a necessary holding of Bulger and Mays, then yes, we would ask that that would be reconsidered because the PLRA is not an appropriate special factor. And I think this leads me back to the kind of overarching part we have here, which is that the existence of a test presupposes an answer. When you're looking at any of these special factors, they cannot be interpreted in such a way that every possible extension of Bivens, Carlson, or Davis would be prohibited. Because that is not what the Supreme Court held. That's different than saying, hypothetically, I'm not sure this is the rule, but you could have a rule that says, given the special factors, it can never be extended in prisons. And so your idea that there is a crack in the door, I totally accept, but it's a little hard to see after Mays and Bulger where that crack is for BOP. Yes, and Your Honor, one, I would argue that I think it's possibly acceptable. I would actually push the extensions of, there must be at least some extension of Davis, Carlson, and Bivens individually. But even if we look at just Bivens itself, and there must be some extension there, again, the issue here is that, I guess I just go back to the non-operationalness of the administrative remedy programs. In my reading of Bulger and Mays and Smith, that is the main feature. It's what the Court repeated in Nelson, the unpublished opinion on this issue. And to me, those are the main issues. Again, though, if the Court disagrees on that, we would ask that those be reconsidered because they don't follow under the Supreme Court's precedent. I see my time is almost up. I reserve the rest for rebuttal. Thank you. Thank you, Mr. Zinno. Ms. Frith. Good morning, Your Honors, and may it please the Court. Krista Frith on behalf of the Federal Bureau of Prisons. This Court should affirm the District Court's dismissal for failure to state a claim on a screening order for two reasons. First, BOP cannot be a defendant to a Bivens lawsuit as Mr. Fields has conceded. Second, Egbert forecloses Mr. Fields' claims because there are numerous reasons Congress is better suited to create a damages action as this Court held in Tate, Bulger, and Mays. Here Mr. Fields concedes this is a new context. Do you agree, just to talk a little bit about your footnote two in the beginning of his reply brief, that those are alternative grounds for which the BOP should prevail? Yes, Your Honor. And that the you argue first in your brief is technically an alternative ground to affirm the District Court because it didn't need to reach that question because it found no cause of action? Yes, Your Honor, precisely. So you don't think, in other words, the government doesn't think there's any adversity problem here given that you are a live opponent on both of those issues? Correct, Your Honor. Thank you. As a new context, the only question here is whether there is a single reason, just one, Congress is better suited to create a damages remedy. And here there are several reasons that Congress is better suited as the Court held in Tate, Bulger, and Mays. First, the existence of alternative remedial structures demonstrates that Congress is better suited to create a damages remedy here. Can you respond directly to your colleague's to his credit concedes that as they're structured, at least under our prior precedent, those are sufficient. But what those courts don't address is where a rogue officer has denied him the ability to get the form such that he should have a cause of action. And maybe that cause of has denied him access to the grievance procedure. Can you address whether that's the right question? Yes, Your Honor, there are three points to that issue. The first, as you recognized in the conversation with my colleague, is that the analysis of alternative remedial structures is not confined to the particular plaintiff in a particular case. Egbert explains that the analysis is broader. It looks at whether Congress or the executive has created an alternative remedial mechanism indicating Congress is better suited. And this Court used that same approach in Bulger. Here we have that. We have the Civil Rights of Institutionalized Persons Act of 1980 passed by Congress. But his argument is, yeah, that's all great, but neither of those cases dealt with an allegation of a rogue officer. And maybe rogue officer is my term. Maybe we just started using that. But the rogue officer problem, right, which is, yeah, Congress did a great job here. You might not say great, but a sufficient job here, right? And they set up a great system or sufficient system. But the rogue officer is totally different, right? And so that changes the calculus with respect to the remedial scheme. Well, it does not change the analysis, Your Honor, because the analysis is a broader one than the specific plaintiff. And even going beyond that, the analysis... So as long as there is a remedial system, even though it is completely useless and inaccessible to a particular prisoner, that doesn't matter? Yes, Your Honor. And that was the analysis this court employed in Bulger. In Bulger, the alternative remedial remedy process was completely unavailable to that plaintiff because he was deceased. So he couldn't engage in that process. Here it's different. I mean, he was deceased. Here the actual, and I would say officers, rogue officers, plural, denied access to the grievance forms. That is... I mean, dead versus access actually being withheld are two different things. Yes, Your Honor. The other point on that is Mr. Fields is focused on the formal grievance process with respect to the specific BP-8 and 9 forms, but he wholly ignores the sensitive remedy process, which is another aspect of the BOP alternative remedy process. He did not need a form for that. He could have just sent a letter up to the regional director's office and engaged with the alternative remedy process that way. That's in the record? I'm sorry? That's in the record? Yes, Your Honor. It is in... We discussed the sensitive remedy process in our brief. In your brief? Yes. Your brief is not in the record. I apologize, Your Honor. That's why it's not in the record. But for extending grievance, no question. But here, isn't this one that's a different context, a reason that would say here you have a tough test, but you can actually be the wrongdoer and then make sure that the person can't fulfill the test by keeping them out of the process. This is a case where they beat the man up deliberately, a vicious assault. And then here you're saying, oh, well, you know what? I'm not saying that was happening, but the effect of it is that if you keep him from getting the process, then when you come to court, people forget about this beating. There's no action because we cut them off from an alternative remedy and we don't care because we look at the broad issue, because that's what you're telling us. As long as it is existed, we don't care what the tortfeasor did. I have two points on that, Your Honor. First, we've been focused on the BOP alternative remedies process, but that is not the only alternative remedial mechanism here. There's also state tort law, the FTCA, the DOJ, Inspector General Act, and criminal prosecution. If Mr. Fields was so brutally beaten, that is something that could have been criminally prosecuted. And in fact, the Department of Justice does. By whom? By whom? The Department of Justice criminally prosecutes. Have you done it? Me personally. No, not you. Has it been prosecuted? Yes, the Department of Justice has prosecuted BOP employees for engaging in violent acts or otherwise. Here, this case. In this case, not that I'm aware of, Your Honor. So, no alternative remedy there either in this case. Well, I don't know if Mr. Fields made a complaint to the FBI or... He didn't need to make a complaint. You see, he was viciously beaten. I mean, people, I think most citizens would be appalled at what happened in this case. And you're saying that, well, he didn't make a complaint. I mean, that's what justice departments are for, right? Yes, Your Honor. What about this complaint? Why aren't the allegations in this complaint sufficient for the Department of Justice to take notice of it? That's not my purview, Your Honor. I'm not a criminal prosecutor, and I can't speak to what the FBI or the criminal division may or may not do in certain circumstances. Okay, I thought you just did speak to what they do in certain circumstances. I'm sorry, I was talking to this specific circumstance as it relates to Mr. Fields. I can't speak to what the Department of Justice did or did not in terms of to this complaint. But moving beyond just the alternative remedial structures, there are additional reasons that this court held in Bulger and Mays foreclosed Bivens remedies in similar contexts. One of those is the PLRA. When presented with prison context claims, this court has noted that Congress is in action in creating a damages remedy, speaks volumes, and counsels strongly against judicial usurpation of the legislative function. Nabassi discusses the fact that the PLRA did not create a damages cause of action, noting that it seems clear Congress had specific occasion to consider the matter of prisoner abuse and consider the proper way to remedy those wrongs but declined to do so. A third of reason Congress is better suited to create a damages remedy here is system-wide consequences and the impact on prison administration. As this court explained in Tate, citing to Egbert, it is difficult for a court to predict the system-wide consequences of recognizing a Bivens cause of action and that alone is a special factor for closing relief. Normally that might be the case in terms of if they're changing policy, looking at overall, but I can't imagine any circumstances where the BOP would want to do anything to give any kind of safe harbor to the acts that were done in this case, alleged in this case, would there? Is it anything about their policy and operation they want to say, well we don't want that kind of, because I hope that this is very rare, wouldn't you think? Yes, your honor. The beating Yes, your honor. So what policy they would have that want to say that this is the kind of case, whoa, whoa, if you beating like this, if you allow it here, wow, I mean we're going to have a really bad problem. Then we have a bad problem of the whole system, don't we? Yes, but the concern is looking at it from a broader level as the Supreme Court did in Egbert. It's not just whether creating the impact of creating a damages cause of action in these specific circumstances, but more broadly whether creating a cause of action against all BOP officers for allegations of excessive force might be harmful or inappropriate. And the concern there is yes, this allegation is perhaps an extreme one, but there can be lower levels and where do we draw the line. By the nature of incarceration, there is a certain level of force that is used on various aspects of daily life in prisons. Merely putting an inmate in prison is a use of force. Putting him in handcuffs is a use of force. Well, but we certainly understand, have some idea of what excessive force is. The question seems less to be maybe we can't figure out what that is as opposed to once we in total. And the question is whether that cause of action for excessive force creates operational problems. Not whether BOP in this particular case through its inspector general or the bureau or anybody else might have good reason if these allegations are true to take action. But whether creating a cause of action for all types of excessive force claims creates operational problems for BOP. Exactly, your honor. And why do you think this case has to go that far? Well, that is the analysis that the Supreme Court has employed time and time again in Egbert, Abbasi, and this court employed in Tate, Boulder, and Mays. We have to look at it. Special factors analysis is a broad analysis because again, the question is whether there is any reason, just one, that Congress is better suited to create a damages remedy than the judiciary. And here we have several reasons as the court held. It's a damages remedy, Matt, I think maybe this is like a core part of the question. It's a damages remedy for, and then the question that it sounds like we're trying to get at is what comes after the for, right? And one answer is a damages remedy for Eighth Amendment excessive force claims, right? That's as a whole, right? So that's what it seems like the court has suggested in Abbasi and others. But the alternative would be to say a much narrower one, right? We recognize a cause of action when more than six BOP officers were involved in not just excessive force, but extreme excessive force, and they also denied the cause of action or access to the grievance procedures and whatever. So only in that, basically, this particular case do we a little bit gets at, can we do that? Can we recognize a cause of action that is limited to the specific facts or do we have to recognize a cause of action based on the constitutional prohibition? In terms of if the court extended Bivens, it would be extending it to the narrow facts and circumstances of this case. But that is a separate question from the special factors analysis, which, excuse me, the special factors analysis, which looks at the broader question of Eighth Amendment excessive force. Are you aware of any case that is similar to this one that is like this one where the, one of the allegations is that the grievance process or the remedy process was withheld from the inmate? And not because he was dead, but which would be most like this one? I'm not certain, Your Honor. There have been several Eighth Amendment excessive force cases before other circuit courts, which we cite in our briefs, but I am uncertain as to whether any of them particularly allege that the grievance process... So you don't know if there are any that have foreclosed this particular set of circumstances? No, Your Honor. I don't believe so, but there may have been some case law that's come out since our briefing concluded in this case, and I'm happy to provide the court with supplemental briefing on that specific question if it would be helpful to the court. You know, it seems like, as alleged, there's a sort of a, a sort of a, neat is not the right word, but it's sort of a clear line you could draw here in this case. This allegation is so egregious that this would be just excessive force in cases where there's no pretense as alleged to either restrain for purpose of disorderly conduct, uh, you know, manacled, whatever, refused to eat, you know, whatever, those things like that, but when this intentionally, the person's pulled aside into a place for the purpose of beating them up, I mean, isn't that sort of like, this would be a line where it's in alleged intent with no penological purpose? Your Honor, I don't know that those are the things that you're talking about. I mean, he was in a room and he was not, that he was no danger, but he was actually beaten up without, that's not alleged? In the attachments to the complaint, there are several disciplinary proceeding documents indicating that the incidents of the alleged use of force were ones where Mr. Fields was attacking, physically attacking a BOP staff and physically attacking his cellmates, specifically punching him in the back of the head and then sitting on top of him and repeatedly punching him. And what's the other ones? That's one. Those are the two incidents that he is, I understood the complaint to be alleging that he was alleging BOP staff use excessive force and that is an example. And pulling him off somebody, you're saying that? That's what that is? And the ensuing disciplinary, not disciplinary, but getting him under control, that process. There is a host of BOP policies about the use of force in those incidents where an inmate has become violent and when an inmate, how to put it, has become violent and then held for a period of time in a separate area until he has calmed down sufficiently to re-enter general population of the special housing unit. And you're saying that's all that was alleged in this case? That he was just placed in a room so he could quiet down? That's what you're saying? No, Your Honor. I'm not saying that he was just placed in a room so that he could down. But I'm saying those are the, that is the factual background. It's not a situation where Mr. Fields is alleging he was just walking to the chow hall and some officer pulled him out of line and started punching him in the face. The full context of the allegations here are that Mr. Fields himself was engaging in acts of violence against staff and other inmates. What do we do with that? I mean, I don't, I mean, I get the context, but he alleges one thing and he attaches something else to the complaint. I mean, I get there's like a factual dispute about that, right? But that's not really what we're doing here. Wouldn't we still have to take the allegations as they are? I mean, I'm not, I don't know that that matters a great deal, but it seems like the fact, to the extent that there's a dispute between the attachments to the complaint, yes, sometimes we do say an attachment of the complaint. Yeah, so do you have a view on what we're supposed to do in that scenario where we have a conflict between, we, I mean, this certainly comes up in the context of a contract, right? If you attach a contract that's inconsistent with the allegations in the complaint, we sometimes have cases that have ignored the allegation in light of the attached contract. Police report seems a little different. Yes, your honor. And so when a document is attached to a complaint is usually deemed integral, that is deemed integral to the complaint, it is considered part of the facts alleged in the complaint. And so I don't think you need to consider them as competing stories, but instead as, well, but here, they're plainly competing stories, right? I mean, not necessarily. Well, in every plausible sense, they are competing stories, right? He's saying they did this for no reason. The officers are saying they're responding to his disorderly conduct. You know, at some point, if this case proceeded and there was a cause of action, that dispute would have to be resolved. Yes, your honor. And I see that I'm out of time, but we ask that the court affirm the district court's dismissal. Thank you. Thank you, Ms. Smith. Mr. Zimmel, do you have some time reserved? Yes, your honor. I just want to have a quick few points. I want to start with the facts really quickly that the facts in this case are that Mr. Fields, everything that my colleague said is correct about the instance that led to him being put, or at least what's alleged to him being put in the restrictive housing. But he alleges that periodically, every half an hour, while he was picked him up and slammed his head against a concrete wall, beat him with steel-toed boots while he is shackled. And so again, like, so the BOP, whether he had done something before or not, it is not their role. That is not, you know, even if we look at the normal state law, you know, their state claim here against the state officer, this would be excessive force and would easily survive a motion to dismiss on that claim. Second, just a couple. Just so I understand, I think I understand what you just said, but I just want to make sure that I did. Yes, your honor. So with respect to the attachments, your point of that is, yes, you're not disputing there was some disorderly conduct, but the response to that or the continued beating was excessive. It didn't matter what he did on the front end. Yes, your honor. So I was wrong. You're telling me I was wrong and I'm totally good with that, right? That's why I want you here. So it's not necessarily that they're actually in conflict. They just, one provides context for the other. Not that the disorderly conduct justifies the conduct, the beatings, alleged beatings, but they're just separate incidents. And so they're not actually in conflict. I stand corrected, it sounds like. So he brought, Mr. Fields brought a lot of claims. And one of the claims he originally brought that was dismissed for other reasons was him being put potentially into the restrictive housing. And so what he had done before for why he was placed in restrictive housing is certainly relevant. But once he's in the housing and he is not, you know, he's again shackled, he's not a safety risk at that point. Basically, as he alleges, the periodic beatings, every half an hour that they had to come check on him for policy, he was beaten some more. Those have no justifiable penological process. I also want to mention just a couple of real quick points that the sensitive remedies, at least as I read the CFR, which are 28 CFR 54214, also must be on the same BOP forms. So Mr. Fields didn't specifically say sensitive remedies in his complaint, but it must be on the same request. So when I read the CFR, you discussed it in your brief and they discussed it in their brief. Why do you think it has to be on the same form? Because it refers to, Your Honor, and I actually have it here, it refers to the request. The thing goes back, and there's actually a link if you look at it online for them, to the request. There's an actual form that BOP has and everything refers to that request, the form being on that request. It's a reasonable interpretation that that BP 9 form of the request is the same request that's being referred to throughout the entire CFR. So the implication is that the CFR section where it says the request, we interpret that request to refer to a form used in a different type of administrative proceeding? That seems odd. No, Your Honor, that is the request, the form that's in section A of the BOP of the CFR, and then section D is the sensitive remedies. What I'm saying is that the request form mentioned in section A for the normal request and for section D for the sensitive remedies are the same requests. That's in the same CFR section. And further, as I'm completing at this point on the complaint, if we're looking at if that is an issue to this court, the complaint is a pro se complaint that must be liberally construed and he alleged that he was denied access to his remedies. And the last thing I wanted to mention really quickly is to Judge Gregory's point that if we're worried about a flood of cases, a flood of cases here presupposes that we have enough beatings in the Bureau of Prisons that would survive the PLR rights, pre-screening requirements, qualified immunity, the Twombly-Iqbal standard, that is a bigger problem. If we are really worried, the DOJ is really worried that that many claims would be brought because of this type of beatings, that is a bigger problem. But if we take Twombly and Iqbal on its face, all it requires is an allegation, right? So if he's present and he says this is what happened, that's always going to survive Twombly and Iqbal, right? So if I'm an inmate and I say every hour on the hour they walked in and they kicked me in the head, I'm a personal affiant. If I say that, that's sufficient, right? Your Honor, I see I'm out of time. Can I briefly respond? I'm sure that Judge Gregory will let you answer. Just really quickly, Your Honor, on that, there's two things. One, that's where the PLRA makes this an inmate who does that is open to perjury considerations and is open to having their ability to file lawsuits in the future removed. And that makes this a very unique situation. Further, on the Eighth Amendment, you have to allege more, you have to allege some sort of, there's a subjective component on the Eighth Amendment's excessive force. And so post-Twombly, Iqbal, as I understand it, you no longer are allowed to allege just malice. You have to have some kind of facts to support that that's what's behind it. And with that, Your Honor, I'd like to, we ask that this Court either remand with instructions to allow for discovery. Thank you. All right. Thank you, counsels. I appreciate your arguments. We'll come down and greet you and then proceed to our final case.
judges: Roger L. Gregory, Stephanie D. Thacker, Julius N. Richardson